# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANGELA LOUISE THOMPSON,

   Plaintiff,

  v.                                                            Case No. 18-CV-1698

ANDREW M. SAUL,
**Commissioner of Social Security,**

   Defendant.

## DECISION AND ORDER

     Angela Louise Thompson seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and remanded for further consideration pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

     Thompson filed a Title XVI application for supplemental security income on November 10, 2014. (Tr. 22.) She alleges disability beginning on November 27, 2009 due to degenerative joint disease of the right knee (status post anterior cruciate ligament (ACL) reconstruction), degenerative disc disease of the cervical spine with left shoulder pain, obesity, and peripheral edema. (Tr. 22, 24.) Thompson's applications were denied initially and upon reconsideration. (Tr. 88–98, 100–13.) Thompson filed a request for a hearing and a hearing was held before an Administrative Law Judge on March 30, 2017. (Tr. 41–84.) Thompson testified at the hearing, as did a vocational expert. (*Id.*)

In a written decision of November 1, 2017, the ALJ found that Thompson had the severe impairments of degenerative joint disease of the right knee (status post anterior cruciate ligament (ACL) reconstruction), degenerative disc disease of the cervical spine with left shoulder pain, obesity, and peripheral edema. (Tr. 24.) He also found that she had the non-severe impairments of degenerative joint disease of the left knee, post-traumatic stress disorder (PTSD), adjustment reaction disorder, and anxiety. (*Id.*) The ALJ further found that Thompson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 26–27.) The ALJ found that Thompson had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 416.967(a) except never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally reaching overhead on the left; and must be permitted to use a cane for stability when ambulating. (Tr. 27.)

The ALJ found that Thompson could not perform her past relevant work as a cashier. (Tr. 33.) However, the ALJ found that considering Thompson's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Thompson can perform. (Tr. 34.) Therefore, the ALJ found Thompson not disabled. (Tr. 34.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Thompson's request for review. (Tr. 2–4.)

## APPLICABLE LEGAL STANDARDS

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

2

conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Thompson argues that the ALJ erred by: (1) failing to find that Thompson's impairments met or equaled Listing 1.02A; (2) relying on flawed credibility findings; (3) improperly assessing the opinion evidence in the record; and (4) failing to account for non-severe impairments in the RFC determination. I will address each argument in turn.

1. *Listing 1.02A*

Thompson argues that the ALJ erred in finding that Thompson's impairments did not meet or equal Listing 1.02A. (Docket # 12 at 11–22.) Thompson asserts that the ALJ applied the wrong legal standard by improperly limiting his consideration to her need for a

3

wheelchair, and wrongly found that she had no gross anatomical deformity and no difficulty with ambulation. (*Id.*)

The claimant has the burden of showing that her impairments meet or medically equal a listing. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). To establish that an impairment or combination of impairments meet or are equivalent to a listed impairment, a claimant must present medical findings that are at least equal in severity and duration to the criteria of any listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990) (citing Social Security Ruling ("SSR") 83–19 and 20 C.F.R. § 416.926(a)).

The ALJ found that Thompson did not have an impairment or combination of impairments that met or medically equaled Listing 1.02. (Tr. 26.) At the time of Thompson's hearing, Listing 1.02A read as follows:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; . . .

The ALJ explained that he evaluated Thompson's knee impairment under Listing 1.02, but concluded that it did not meet or equal the listing:

> The undersigned evaluated the claimant's right knee disorder under pertinent listing 1.02, but there is no documentation of gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) involving one major peripheral weight-bearing joint, resulting in inability to ambulate effectively, as defined in 1.00B2b. The undersigned notes that the claimant uses a wheelchair for mobility, but there is no objective evidence that she requires the wheelchair to ambulate. Rather, the claimant's primary care provider observed a normal gait, noting the claimant would benefit from a manual wheelchair based on the claimant's own history of her illness (Ex. 10F/47, 61). As such, the claimant does not meet or equal the listing.

4

(Tr. 26.)

The ALJ's opinion is opaque as to which element(s) of Listing 1.02A he found lacking. But he acknowledged elsewhere in his opinion that an x-ray showed some degenerative changes in Thompson's knee (Tr. 24, 28, 30) and that Thompson had mobility problems requiring use of a cane (Tr. 28, 31). However, he also repeatedly noted the lack of documentation that Thompson's mobility issues resulted from the objectively identified knee impairment. (Tr. 26, 29–30, 32, 33.) The orthopedic surgeon who reviewed the x-ray results with Thompson, Dr. Scott Hicks, did not draw any connection between the problems identified on Thompson's knee x-ray and her mobility problems. (Tr. 383–85.) Nor did her primary care providers, Dr. Michael Martella and Dr. Steven Staehling. (Tr. 358–64, 367–74, 444–60, 473–81, 486–95, 503–21.) Their treatment notes acknowledge Thompson's mobility issues, but do not suggest that they were caused by problems identified on medical imaging. Indeed, all these doctors suspected that her pain had an entirely unrelated component, such as nerve damage or a psychological element. (Tr. 337, 362, 368, 385, 511.) Similarly, the orthopedic surgeon who performed her ACL reconstruction in 2009, Dr. Mark Lang, evaluated her 2013 knee MRI and identified no cause for the pain she complained of. (Tr. 335–38.) Dr. Lang suggested that Thompson's pain might have an unrelated component. (Tr. 335–36.) Without a medical opinion pointing to an objectively identified deformity as the cause of Thompson's mobility problems, the ALJ properly declined to find her presumptively disabled under Listing 1.02A. *See Frazee v. Berryhill*, 733 Fed. Appx. 831, 834 (7th Cir. 2018) ("No doctor ever attributed any limitation in functioning to these deficiencies. . . . The ALJ cannot be faulted for not 'playing doctor'."); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014)

5

("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves.")

Thompson also argues that the ALJ applied the wrong legal standard by not considering her obesity or her nerve damage in connection with her knee disorder in determining whether her impairments equaled the listing. (Docket # 12 at 11, 19–22.) The ALJ clearly stated: "The undersigned has considered the impairment of obesity using the criteria for the musculoskeletal impairments under Listing 1.00Q, as required by Social Security Ruling 02-1p. However, the evidence does not support a finding that the claimant's obesity results in the severity of the symptoms required to meet or equal the listing." (Tr. 27.) Thompson does not point to any evidence in the record that would support a conclusion that her obesity exacerbated her symptoms. *See Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002) (affirming where none of the evidence the ALJ overlooked supported disability). Thompson's reply brief offers only one treatment note stating that her right knee pain appeared "neuropathic in nature." (Docket # 18 at 4.) It is unclear how this is relevant to Thompson's obesity, and it adds little to Thompson's conclusory statement that the ALJ should have considered Thompson's nerve pain. Thus, Thompson has not shown that the ALJ erred. *See Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (error on ALJ's part harmless were claimant failed to specify how her obesity further impaired her ability to work).

2. *Credibility Findings*

Thompson argues that the ALJ inappropriately discounted Thompson's subjective reports of disabling pain because they were "not entirely consistent with the medical evidence and all other evidence in the record." (Docket # 12 at 22–27 (citing Tr. 28.).) I agree.

6

The Commissioner's regulations set forth a two-step test for evaluating the credibility of a claimant's statements regarding her symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

A court's review of a credibility, or consistency, determination is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). On judicial review, courts "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted).

In this case, the ALJ explained that he found that Thompson's medically determinable impairments could reasonably be expected to produce Thompson's reported symptoms, but

that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 28.)

I agree with Thompson that the ALJ's decision is patently wrong, to the extent he finds inconsistencies where there are not. Most troubling is the ALJ's conclusion that Thompson's medication history is inconsistent with allegations of disabling pain. (Tr. 29.) The ALJ relies on notes reflecting improved symptoms with medication, but there is no logical bridge between improvement in symptoms and the conclusion that the symptoms are not severe; improved pain may still be severe pain. Furthermore, Thompson's medication history over the relevant period unequivocally shows the opposite of adequate pain management. The earliest medical record, from 2013, indicates that Thompson took only aspirin. (Tr. 320.) At that visit, she was prescribed Vicodin for knee pain. (Tr. 321.) Her primary care provider added Celebrex later that year (Tr. 372–73), then Lyrica a few months later (Tr. 367–68). In 2014, her doctor added Lidoderm patches in increasing numbers. (Tr. 359, 361.) In 2015, Percocet was added and increased. (Tr. 478, 486, 491, 494, 504, 508, 511, 515, 518, 520.) By 2016, Thompson's daily pain regimen consisted of Celebrex, Lyrica, Lidoderm patches, and an increased dosage of Percocet. (Tr. 444–76.) Repeated additions of new pain medications and increasing dosages of current pain medications is consistent with, rather than inconsistent with, allegations of disabling pain.

Similarly, the ALJ relied on evidence that Thompson declined alternative treatments in discounting her subjective complaints, but there is no logical bridge between the evidence and the ALJ's conclusion. The ALJ stated, "[H]er failure to pursue recommended pain management treatment is inconsistent with her allegations of disabling pain, and suggests her

8

pain was adequately managed with medication." (Tr. 30.) The ALJ misconstrues as a "recommendation" the statement of one orthopedic surgeon, Dr. Hicks, that he "discussed" non-operative treatment options such as physical therapy, cortisone injections, or viscosupplementation. (Tr. 385.) But Dr. Hicks said only that he would recommend trying cortisone injections *in the future* "[i]f things persist." (*Id.*) Thompson's prior orthopedic surgeon, Dr. Mark Lang, said only that he "talked about potentially seeing therapy again" (Tr. 337). He ruled out knee replacement surgery and did not mention any other alternative treatments. (Tr. 336–37.) On the contrary, he specifically said he had nothing else to offer her. (Tr. 336). In short, there is no record of any doctor recommending alternative treatments to Thompson, and the ALJ misconstrues the record as such. Furthermore, there were other explanations for Thompson's failure to pursue alternative treatments that the ALJ ignored, mainly that Thompson had reasons to believe they would not help. Records indicated she believed she had experienced worsening pain and no benefit with physical therapy in the past (Tr. 336–37, 511) and her mother had experienced worsening pain with viscosupplementation (Tr. 511). Several doctors suspected that Thompson's pain had some component unrelated to her knee such as nerve damage or a psychological element, giving her reason to question the value of alternative treatments aimed at her knee joint. (Tr. 337, 362, 385, 511.) In concluding that Thompson's failure to pursue alternative treatments indicated lack of severity of her symptoms, the ALJ simply ignored all this evidence. To the extent the ALJ believes Thompson should have pursued other treatments, he is improperly substituting his own judgment for that of Thompson's physicians. *Moon*, 763 F.3d at 722. The ALJ's conclusion reflects that he misconstrued the record, ignored relevant evidence, and/or improperly "played doctor."

Furthermore, the ALJ improperly relied on Thompson's activities of daily living to conclude that she exaggerated her symptoms. (Tr. 30.) The ALJ pointed to Thompson's performance of various self-care tasks, playing on her iPad, reading, watching television and movies, babysitting for two hours a day with help, preparing some simple meals, doing some housework, taking short walks, etc. (Tr. 30–31.) The ALJ opined that these activities demonstrate that "the claimant remained able to engage in a number of normal day-to-day activities, many of which involve at least a sedentary level of exertion." (Tr. 31.) The ALJ failed to explain how participation in these activities was inconsistent with Thompson's reported pain or mobility limitations or to acknowledge the difference between sedentary activities of daily living and sedentary work in the employment context. *See Cullinan v. Berryhill*, 878 F.3d 598 (7th Cir. 2017) (no obvious inconsistency between doing household chores and allegations of pain and limited mobility, so without further explanation the ALJ did not substantiate finding that daily activities revealed exaggeration of limitations); *Ghiselli v. Colvin*, 837 F.3d 771, 777–78 (7th Cir. 2016) ("[W]ithout acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ was not entitled to use [claimant's] successful performance of life activities as a basis to determine that her claims of a disabling condition were not credible."); *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) (finding that the ALJ improperly based his adverse credibility determination on, among other things, the claimant's ability to care for herself and her grandchildren); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The failure to recognize [the] differences [between activities of daily living and activities of a full-time job] is a recurrent . . . feature of opinions by administrative law judges in social security disability cases.").

In sum, the ALJ failed to provide a logical bridge between the evidence and his conclusion that Thompson's symptoms were not as disabling as she claimed. Because key factors identified by the ALJ as informing his negative assessment of Thompson's subjective complaints were unsupported by the record, the determination itself must be considered patently wrong. *See Ghiselli*, 837 F.3d at 778. And because that determination informed the ALJ's findings about Thompson's RFC, the case will be remanded.

3. *Weight Given to Opinion Evidence*

Thompson faults the ALJ for improperly assessing the opinion evidence of Dr. Staehling (Docket # 12 at 23–25), Cathleen Coughlin-Becker, OTR (*id.* at 25–27), and Nicole Clinge (*id.* at 28).

An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2).[1] If the opinion of a treating source is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the opinion is given "controlling weight." *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, he may not simply reject it. Social Security Ruling ("SSR") 96-2p. Rather, if the ALJ finds that a treating source opinion does not meet the standard for controlling weight, he must evaluate

---

[1] On January 18, 2017, the SSA published the final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence" in the Federal Register (82 FR 5844). The final rules became effective on March 27, 2017. For claims filed before March 27, 2017, however, the SSA continues to apply the prior rules that were in effect at the time of the ALJ's decision. https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html (last visited Sept. 27, 2019).

Further, the regulations governing the evaluation of disability for disability insurance benefits and SSI are nearly identical; thus, I will generally refer to the regulations for disability insurance benefits found at 20 C.F.R. § 404.1520, *et seq.* for ease of reference.

11

the opinion's weight by considering a variety of factors, including the length, nature and extent of the claimant and physician's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; and whether the doctor is a specialist. 20 C.F.R. § 404.1527(c).

The ALJ must always give good reasons for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. An ALJ can reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

### 3.1 Dr. Staehling

The ALJ gave little weight to the March 2015 statement of Thompson's primary care provider, Dr. Staehling, that Thompson's pain "certainly interferes with her daily activities and she would have extreme difficulties finding any type of employment on a consistent day-to-day basis." (Tr. 33 (quoting Tr. 503).) The ALJ explained that this statement was vague and conclusory; failed to provide specific limitations or underlying reasoning; was based solely on Thompson's subjective reporting; and concerned an issue reserved to the Commissioner. (Tr. 33.)

The ALJ's decision is consistent with the regulations, because Dr. Staehling's statement is not a "medical opinion" for the purposes of 20 C.F.R. § 404.1527(b) or (c). The regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your

physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). While certainly Dr. Staehling may have relied on medical opinions to reach the conclusion that Thompson would have trouble finding work, that conclusion itself is not a medical opinion. Additionally, it is found in the section of the medical record entitled "History of Present Illness" and appears to be based not upon the physician's examination but on Thompson's subjective reports. It is therefore not entitled to any weight under 20 C.F.R. § 404.1527(b) or (c), and the ALJ did not err in discounting it.

### 3.2 Coughlin-Becker

The ALJ also gave little weight to the opinion of Coughlin-Becker, an occupational therapist who performed a functional capacity analysis. (Tr. 32 (citing Tr. 415–19).) Coughlin-Becker opined that Thompson was incapable of even sedentary, low stress jobs and would be absent from work more than four days per month as a result of her conditions. (Tr. 32.) The ALJ explained that Coughlin-Becker is not an acceptable medical source and her opinions are based on the claimant's subjective complaints rather than a function-by-function analysis of her physical capacity. (*Id.*) The ALJ also noted that Coughlin-Becker does not appear to have ever examined Thompson. (*Id.*)

Thompson argues that the ALJ failed to consider all the factors in the regulation, but she does not explain how consideration of any of the other factors would have prompted the ALJ to give more weight to Coughlin-Becker's opinion. As the Commissioner rightly points out (Docket # 16 at 22–23), many of the factors in the regulation (the examining relationship, the treatment relationship's length and nature, the use of explanation and evidence to support the opinion) weigh *against* giving weight to Coughlin-Becker's opinion. Coughlin-Becker never treated Thompson, appears not to have physically examined Thompson, and largely

13

relied on Thompson's own reports of her symptoms and limitations. (Tr. 415–19.) Thus, the ALJ did not err in giving little weight to her opinion.

### 3.3 Clinge

The ALJ gave little weight to the statements of Nicole Clinge, an employee of Thompson's insurance carrier who opined that Thompson required a long-term care worker to help her with daily activities and needed a wheelchair to ambulate. (Tr. 32 (citing Tr. 431–43).) The ALJ explained that Clinge is not an acceptable medical source and her opinions are inconsistent with the medical evidence of record. (*Id.*) He asserted that the medical and other evidence does not support a finding that Thompson requires a wheelchair to ambulate. (*Id.*) He also noted that Clinge's opinion was based solely on subjective complaints, with no function-by-function analysis of the claimant's physical capacity. (*Id.* at 32–33.) The ALJ's decision was consistent with the regulations. Clinge was not an acceptable medical source, and the fact that she relied solely on Thompson's subjective reports is reason enough to discount her opinion. Thompson's arguments to the contrary are perfunctory and unconvincing. (Docket # 12 at 32.) Thompson claims that as a specialist in long-term care, Clinge had "special knowledge as to a person's ambulatory situation," urging the court to assume that the insurance carrier would hire experts to perform these screenings. (Docket # 18 at 15.) This argument misses the point. Even assuming Clinge had expertise, she appears to have had no knowledge *about Thompson* to which to apply that expertise, other than Thompson's subjective reporting. Therefore, the ALJ properly discounted Clinge's opinion.

### 4. *Non-Severe Impairment: PTSD*

Thompson argues that the ALJ erred in failing to account for her PTSD in the RFC. (Docket # 12 at 28–30.) Because this case is being remanded on other grounds, I need not

14

determine whether the ALJ erred. On remand, the ALJ must account for all limitations from non-severe impairments to the extent supported by the record. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

## CONCLUSION

The ALJ erred in his assessment of Thompson's subjective complaints. Accordingly, the Commissioner's decision is reversed and the case will be remanded for further proceedings consistent with this decision.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of September, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge